The next case this morning is 21-2622, Greenbank v. Great American Assurance Company. Good morning Mr. Burkhart. Good morning. May it please the court, Robert Burkhart for the appellant Julie Greenbank. Ms. Greenbank seeks reversal of the district court's summary judgment orders and final judgment. At its core, this appeal asks whether Great American was obligated to consider Ms. Greenbank's interests, the policy purpose, the insured use, the alternative treatments, and its conflict of interest when making euthanasia and the tenotomy treatment decision under the mortality policy. I'll refer to these as kind of the reasonableness factors. District court said no, but Ms. Greenbank asserts that Indiana law holds otherwise. Policy construction is a question of law. The court looks at the reasonable interpretation from the perspective of an average insured. And what Great American has said is that we don't have to consider these reasonable factors. And in fact, they readily concede. They neither consider them nor discuss them with the veterinarians when approving the tenotomy and making those decisions. And in fact, their vice president testified that under the policy, Great American can approve any treatment of the equine with impunity, even going so far as to alter the very use for which the insured purchased the property and insured it. Mr. Burkhart, you are pursuing liability under the portion of the policy that deals with death or authorized humane destruction of the horse. And it looks like Thomas is still alive or certainly was at the time this was brought. Why doesn't the fact that Thomas is still alive foreclose your argument for breach of the policy in bad faith? I think there's two components to that. One, there is whether they unreasonably withheld authorized humane destruction. And our position is that by failing to consider all these reasonableness factors, what they did is merely keep this horse alive for three months until the policy terminated. And secondly... But what's your evidence, if that's your argument, what's your evidence that a veterinarian certified that euthanasia was the way to go? Well, there's three components under authorized humane destruction. One, it's whether Ms. Greenbank's vet certifies, whether Great American's vet certifies, or under the first section where Great American agrees to that. And what we're saying is the standard was met. There's no dispute that the horse suffered from an illness, injury, and disease, and lameness, and physical disability. If you're going under the first portion of the provision, that's that Great American expressly agreed to the destruction of the horse. What's your argument? What's the evidence in the record that Great American expressly agreed to that? Our argument is that that is subject to a reasonableness factor under the policy. Indiana law imposes the duty of good faith and fair dealing, and what we're saying... What's the evidence that they expressly agreed to the destruction of the horse? I did not see anything in the record that would support that. No, because what they did is they withheld that authorized humane destruction in order to keep the horse alive to just get to the end of the policy. Your argument, Ms. Greenbank's argument, is that they should have agreed to euthanize the horse. So as a corollary to Judge St. Eve's question, where in the policy are you getting these rules or standards about how Great America should have agreed to Ms. Greenbank's desire that the horse be put down? Because what you look at is the policy construction, and that's where Indiana law imposes the duty of good faith and fair dealing. And what you say is there's reasonableness when you make those determinations under the policy. And what Great American did, one, was to authorize humane destruction, and secondly was when they exercised the right to take control of the treatment, then they made the decision to perform this tenotomy. So that's a separate issue as well, and that decision, again, is subject to a reasonableness factor where they say... But that's not the basis of liability in the policy. That's a limitation on the use. You're pursuing liability here based on authorized humane destruction. It's twofold. One, there's the mortality component, which is the covered loss, and that's where the authorized humane destruction. But you also have a separate right, which Great American exercised under the policy, where they can take control of the horse during the policy period and said we're going to make treatment decisions. So that's a separate right they exercised. And when you exercise that right, that's subject to a reasonableness standard. And what we're saying, when they approved this tenotomy, they didn't consider any of these factors. They didn't consider the fact that it would alter the use. And what they're saying is we don't have to consider any of that because under this policy we can take your horse, we can exercise that right, take your horse and remove the very use for which you insured. And what we're saying is Indiana law says these are adhesion contracts. If you want an insurance company to include these rights, and that in this case would be the right to change, alter the use, the insured use, you have to have that language in the policy. And they didn't have that language. And that's because what that does, if they would have had that language in the policy which says, hey, when we exercise this right, we can alter the use by any treatment we want, if that would have been in the policy, when Ms. Greenbank goes to her insurance agent, your insurance agent is going to say, hey, look, here's a couple of different options. One's Great American, but under Great American's policy, they can take control and alter your use without any liability to you. So you paid $500,000 for this show horse, insured it as a show horse, but they can take control and they can cut that horse and render it a pasture horse with no liability. Or you can go over here to Lloyd's of London. They don't have that type of language in their policy. They won't do that. So the insured gets full disclosure and can make that determination. And what we're saying here, they want that right to be unreasonable, they want that right to alter the use and the treatment, then you've got to include that within the policy, which they didn't. And I think, secondly, what the court said, there's this subset of evidence, and the court said we're not going to allow you to consider it on summary judgment, we're not going to allow it at trial, and that's, well, what's the policy purpose? It's an investment purpose. What's the insured use of this policy? It's a show horse. That's why she bought it, that's why she insured it. These alternate treatments, well, we're not here about loss of use. And so those things we think are all relevant to determine whether there's a breach of the policy or a breach of the duty of bad faith. And I think the other point to yours is Great American has admitted there's a covered loss in this case. When they sent out the examination under oath letter, they represented that that was a policy obligation to respond by Ms. Greenbank. And that provision in the policy says a condition precedent for sending that letter, for making that requirement for examination under oath, is a covered loss. And they've asserted that as an affirmative defense. They've asserted that in their statement of defenses, and they've argued on summary judgment that was a breach of the policy because she didn't sit for this examination under oath. And our point is, if you send this EOU letter, that admits the existence of the covered loss. And that's binding and conclusive. And they said, yeah, we deny policy benefits based upon your failure to sit for this EOU. And you can't, this is a multi-billion dollar insurance company. They understand their policy. You don't just get to send out letters saying, well, here's what your policy obligation is, and you're in breach of that. But then when we say, wait a second, the whole basis for sending this letter is the condition precedent must be established that there's a covered loss. And they say, well, that's not applicable. So we think that. You're into your rebuttal time, just so you know. Okay, I'll reserve the rest. Thank you. Good morning, Mr. Griffin. Good morning, Your Honors. Hugh Griffin for Great American Insurance Company. I was going to start out with your line about, you know, we're here today on a horse mortality policy for a horse that's alive and doing remarkably well. So I think I could almost stop there. But let me pick up on this EUO. That was a footnote, by the way, in your brief. The EUO coverage did have a preface about in the event of a covered loss, you are to come in and give us some sworn testimony, et cetera. I mean, an insurer is allowed to raise all kinds of defenses, alternative or otherwise. There's nothing against that. The only time that it might be a problem is if the insured relied on that, changed its position somehow with prejudice by one position that the insurer took. And that didn't happen here. They didn't come in. They refused to come in. They filed suit. That's what they did. So it doesn't – there's just nothing in terms of that EUO coverage that affects the fact that, as Your Honor has pointed out, the policy is straightforward. Either the horse dies of a condition that occurred naturally during that policy term, that's woman, or there's an authorized humane destruction. And that requires, as Your Honor has already pointed out, either an unconditional agreement by the insurer to put the horse down, as we say in the horse business, or in terms of illnesses or diseases that a veterinarian appointed by Great American certifies that the suffering of the horse is incurable and so excessive that immediate destruction is imperative for humane reasons. And, of course, that never happened here. When he got to Haggard's, two veterinarians looked at him and said, We think we can do something for this horse. And Dr. McGilvery thought she could cure the abscess. Dr. Frehley thought he could cure the laminitis. They undertook the treatments, Great American, as they had a right to do. The policy gave them a right to control and pay for any treatment that they felt was required, and that's what they did. And the treatments were very successful. I don't know if you've sent for the videos or not, but the horse is doing very, very well. What should we make of the fact that the horse was never returned? The horse is still with us, yes. Correct. They have never asked us for the horse back. Where in the policy does it give Great American the right to retain the horse long after the policy is terminated? Well, the provision is to control. If we so require, we will assume control of the horse by a qualified vet of our choice at our expense. There's no time limit on that. There's no saying that we can only treat the horse up through the policy, period. I don't know really what the argument is, that we should have treated the horse until the policy expired and then dropped him back and said, well, here he is. Good luck. Well, Great American makes this argument that Ms. Greenbank abandoned the horse to Great America at the moment she dropped the horse off for the treatment, but that was pursuant to the policy. The policy required her to turn over the horse for treatment. Yes, but I think at this point in time, she has abandoned it. She's never, in all the time we've been doing this, she's never asked for the horse back. Her counsel made a statement to a magistrate that for all we care, they can keep the horse. They never filed for replacement. So their argument is that the horse should have been euthanized. That's their conclusion. So, again, we're here today about whether they can recover $500,000 of mortality proceeds. And the fact that we're all in on this, and maybe it costs a lot more than we anticipated it would, doesn't breach the policy or give them any rights to recover, and I don't think they preserved it at all, their claim for conversion, because, again, they never asked for the horse back. And what the law is, if you originally have right to possession, cases say, if your possession was lawful at the beginning, you've got to have that unconditional demand to bring a claim for conversion, and that doesn't exist here. So, I mean, the district court did not ignore plaintiff's arguments. Well, she also alleged a statutory conversion where you don't need that demand. Right, but they've got to have a mens rea. And they didn't brief that one, Your Honor. They didn't cite those statutes. We cited it in a footnote back to the district court, and I think there's a Seventh Circuit decision right on point as to you've got to have mens rea. And without any demand, without any indication they wanted it back, what their position is you should have euthanized it. That mens rea doesn't exist, and that's what the district court held. The district court looked, heard the arguments, and said there's no factual support for finding that Great American unreasonably, arbitrarily, or otherwise improperly withheld Thomas' euthanization. There's no evidence in the record in support of finding that Great American did not consider the reasonableness of euthanization or that ignored two veterinarians recommending euthanization, just the opposite, just the opposite. And as far as the law goes, I mean, there are cases that they do cite. It's funny that they cite really the best case that I could have cited, the Rogers case, which was a racehorse seriously injured, but the veterinarians wouldn't certify that it couldn't be cured, that he couldn't recover pain-free, but he'd never race again. And the insurer put the horse down, claimed the policy proceeds, and the court said no, these policies don't cover loss of use. That's not what's covered here. As you mentioned, the use provision is for the insurer. If it's going to be used for something other than a show horse, they decide they want to race him or they want to run him across country and jump some hedges and some ditches, you've got to call the insurer and tell them that. But loss of use isn't covered. That's just with the Rogers case. Hey, this policy didn't cover the horse to be continued as a racehorse. It insured his life. It's of no moment here, but what can you tell us about loss of use? Does Great America offer a loss of use policy that Ms. Greenbank could have purchased? I'm not sure that they offer it for saddlebreds. I'm not sure they do. He talked about Lloyd's and Lennon. I don't know what they do. So I'm not sure whether that's available or not. But it's certainly not available in this policy. The only case law that's out there where an insurer was held to have acted unreasonably or arbitrarily is where there was undisputed veterinary evidence that this horse is suffering from incurable pain so excessive that immediate destruction is necessary for humane reasons. And the insurer said, no, we're not going to do it. That's the only case law that's out there. There's no case law that ever said an insurer acted arbitrarily or unreasonably in following veterinary recommendations. And that's just what happened here. So unless there's any further questions, we would ask that the district court be affirmed in all respects.  Mr. Burkart, you have just a little bit of time left for rebuttal. Just to that last point, counsel referred to the other veterinary opinions. And the one that the Great American didn't consider was Dr. Fraley, the one who said we need a tenotomy. What he said is future athleticism is unlikely. They didn't consider that factor. They didn't consider that whatsoever. And the loss of use, there's no, as you indicated, counsel, Great American doesn't offer that for the policy. But that really doesn't matter because what it is is looking at the tenotomy. What was the tenotomy's impact on the insured use and the insured investment interest? And Great American says we don't care because we don't have to consider that. And the court agreed with that. We think that's wrong. The court's interpretation of the policy is you look at the reasonableness from the perspective of an insured. And the insured's reasonable perspective is if I go to an insurance company to insure my horse, they're not going to be able to take it and perform a procedure which removes the very use for which I bought it and insured it. And if you look at covered loss under the policy, it's not just death. It's mortality, which is defined as death or authorized humane destruction. It's theft and wobbler system. Both of those two, theft and wobbler, don't require death. Even authorized humane destruction doesn't require death. It's just the insurance company's agreement that, all right, there's this issue with the horse. It can be lameness. It can be physical disability, illness, injury. And that satisfies. And what we're saying in this case is you ignored two vets who said things could be euthanized. You ignored the impact on the use when making that decision. You then agreed to this tenotomy to keep him alive, which removed his future athleticism. All those, and then on top of that, when Ms. Greenbank found out about that, that very day, she objected. And they simply ignored the conflict of interest they had and threatened her and said, if you don't agree, you're going to lose your policy. Thank you, Mr. Burkhart. Thank you. This case will be taken under advisement, thanks to both counsels.